FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

01 MAR 14 AM 10: 26

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| MILES ROWE, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CIVIL ACTION CV 00-J-76-NE |
| THE CITY OF MADISON, et al., | ) | |
| Defendant. | ) | |

ENTERED
MAR 1 4 2001

## MEMORANDUM OPINION

This cause comes before this court on defendant's motion for summary judgment (doc. 33). After defendant filed its motion for summary judgment, the plaintiff filed a motion to voluntarily dismiss his Americans with Disabilities Act, 42 U.S.C. §12101, et seq. (ADA) failure to accommodate claim and count IV of his complaint (doc. 38). The sole remaining claim before this court is plaintiff's claim against the City of Madison (Madison) for retaliating against him for exercising a protected activity under the ADA.[1]

---

[1] The plaintiff states in his motion to voluntarily dismiss claims: "The plaintiff, through the discovery process, has concluded that his retaliation claim should be dismissed." The next sentence reads: "The plaintiff intends to pursue his ADA retaliation claim (count II)." Plaintiff then asks the court to dismiss "counts I and IV of his complaint". Plaintiff's complaint has two counts identified as "Count III", three total counts, and is devoid of a fourth count. The court assumes plaintiff dismissed the second count III which involves Cecil Moses. Said count was dismissed approximately ten months ago (doc. 20).

1

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the non-moving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama*

*Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

## Factual Background

Plaintiff was employed as a Madison patrol officer from 1980 to 1987 when he left the department to work as a real estate agent. (Rowe depo., p.20-22). Plaintiff was rehired as a patrol officer in December of 1989. (Rowe depo., p. 24-26). In August of 1994, plaintiff was assigned to the third shift which was from 10:00 p.m. to 6:00 a.m.. (Rush affidavit).

Plaintiff was diagnosed with type II diabetes in August 1994. (Rowe depo., p. 38, 43). In a letter dated August 4, 1995, Dr. Steven L. Cowart wrote to Madison police Captain Curtis Rush:

> As Mr. Rowe's physician, I believe he should be placed on the day shift due to his medical condition.

(Rowe depo., exhibit 1). Captain Rush interpreted this letter as a "temporary hardship" and as a request by plaintiff for a temporary change to day duty. (Rush affidavit). Captain Rush granted plaintiff's request and had to transfer another officer from first to third shift. (Rush affidavit). In February of 1995, plaintiff was promoted to "master patrolman." (Rowe depo., p. 204). In April of 1995, Dr. Cowart informed Madison that plaintiff's medical condition had improved but he should be restricted to working the 1st or 2nd shift. (Rowe depo., exhibit 6). Plaintiff remained on the first shift until August of 1997, when he was transferred to the second shift. (Rowe depo. p. 53).

Plaintiff, after informing Madison that he could not work the third shift, worked at several outside jobs which required him to work third shift hours. In January of 1995, plaintiff began working for a McDonalds restaurant as a security guard. Plaintiff's shift at the restaurant was from 10:00 p.m. to 12:00 a.m, but was later enlarged to 1:00 a.m.. (Rowe depo., p. 305). In October of 1997, Rowe began working as a security guard at a Wal-Mart store. His Wal-Mart shift ran from 10:00 p.m. to 7:00 a.m. (Rowe depo., p. 28-29). Since 1990 to the present, plaintiff has delivered newspapers on Saturdays from 2:30 a.m. to 4:30 a.m. and on Sundays from 2:30 a.m. to 5:30 a.m.. (Rowe depo., p. 31). In June of 1998, Rowe asked to work a DUI detail which began at midnight. (Rowe depo., p. 177).

Plaintiff was transferred to the third shift on May 24, 1999. (Rowe depo., p. 115-116). Plaintiff was transferred to this shift because of his low productivity and citizen complaints. (Moses affidavit). On May 13, 1999, plaintiff in a letter to Sergeant Higgs wrote that his "diabetes has gotten worse", he could not work the third shift, and that asking him to work the third shift violated the ADA. (Plaintiff's exhibit 16). From July 15, 1999 to July 19, 1999 plaintiff was absent from work due to an elevated blood sugar level. (Rowe depo., p.120-121). Madison received a prescription slip from Dr. Cowart dated July 14, 1999, stating "Mr. Rowe is restricted to 1st or 2nd shift due to medical illness. This is a permanent restriction." (Rowe depo., exhibit 13).

Madison then reassigned plaintiff to 9:00 a.m. to 5:00 p.m. light duty. (Rowe depo., 59-60). While on light duty, plaintiff could not use patrol vehicles, wear a

5

uniform, or carry his duty weapon. These restrictions are used any time an officer is placed on light duty. (Rowe depo., p. 140-141). Police Chief Moses, on August 19, 1999, asked plaintiff for documentation regarding his outside employment. (Plaintiff's exhibit 7). Moses asked for the information to assist in the "evaluation of [plaintiff's] physical fitness for duty, given your doctor's statement advising that you cannot perform your duties on the 10PM to 6AM shift". *Id.*

On November 7, 1999, plaintiff broke his leg. (Rowe depo., p. 33). Plaintiff could not work following this accident. Plaintiff's orthopedist allowed him to return to light duty work on January 3, 2000. (Rowe depo., p. 299-301).

In May of 2000, plaintiff's orthopedist released him to work without restriction. Rowe depo., p. 74-75). On May 23, 2000, plaintiff was evaluated by Dr. Michael Rowland, a diabetes specialist. (Rowe depo., p. 81, 301).

In June of 2000, plaintiff was reassigned to duties as a 911 dispatcher. (Rowe depo., p. 71). In August of 2000, Madison received a report from Dr. Rowland indicating plaintiff could work as a third shift patrol officer. (Rowland affidavit). Plaintiff resumed working the third shift in August 2000 and continues to work that shift.

### Legal Analysis

As discussed earlier, plaintiff has dismissed his reasonable accommodation claim and proceeds solely on the theory that he is the victim of retaliation. Plaintiff must establish a prima facie case when proving an ADA retaliation claim. A prima facie ADA retaliation case consists of four elements: (1) that the plaintiff engages in statutorily

protected activity, (2) that the employer was aware of that activity, (3) that the plaintiff experienced an adverse employment action, (4) that the adverse action was causally related to the protected activity. *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999).

Plaintiffs argues that he has suffered from two adverse employments actions. The first alleged adverse action was placing him on light duty. Plaintiff was paid his normal salary, that of a master patrolman, while he was on light duty. (Vaughn affidavit). Plaintiff's rank has never changed. (Moses affidavit).

Apparently plaintiff feels that he was the victim of excess accommodation. Plaintiff was placed on light duty following his statements that the defendants were violating the ADA and that his diabetes "had gotten worse" and his doctor placing him on a newly prescribed "permanent restriction". (Plaintiff's exhibit 16; Rowe depo., exhibit 13). The light duty was assigned in order for plaintiff to undergo medical evaluation to determine the effect of his apparently worsening condition. (Moses affidavit). Chief Moses wanted to insure plaintiff was not a threat to himself or others and that he could perform the essential functions of his job. (Moses affidavit). Plaintiff admits he has no evidence to contradict why he was placed on light duty. (Rowe depo., p. 224).

This Circuit has held that the placement of a police officer to light duties pending a medical evaluation is allowed under the ADA. *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999) ("[T]he ADA does not, indeed cannot, require a police

7

department to forgo a fitness for duty examination to wait until a perceived threat becomes real or questionable behavior results in injuries."). Madison returned plaintiff to patrol duties upon receiving Dr. Rowland's evaluation of plaintiff. Reassigning this plaintiff to light duties simply does not rise to the level of an actionable adverse employment decision. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

The second adverse employment action plaintiff complains of is harassment. (Plaintiff's Brief in response to motion for summary judgment p. 10). This harassment occurred when the defendant asked plaintiff for documentation concerning his outside employment and to undergo a medical examination. *Id.,* at 11. In essence plaintiff is arguing that the defendant harassed him because it did not believe his allegations of disability.[2] This plaintiff was working third shift hours for other employers while he was threatening this defendant with an ADA lawsuit for not accommodating his inability to work third shift hours. The request for documentation concerning plaintiff's other third shift jobs does not constitute an adverse employment action. Nor was he harassed by undergoing a medical examination which led to his reinstatement as a patrolman. *See Watson v. City of Miami Beach,* 177 F.3d 932, 935 (11th Cir. 1999)

The court finds that no genuine issues of material fact exist. Plaintiff has failed to establish a prima facie case of ADA retaliation. Therefore defendant's motion for

---

[2]This may explain why plaintiff chose to voluntarily dismiss his failure to accommodate claim.

summary judgment is **GRANTED**. Judgment shall be entered on behalf of the defendant.

**DONE** and **ORDERED** this  13  day of March 2001.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE